IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GREGORY HUTCHINS,                         §
                                          §
            Plaintiff,                    §
                                          §
V.                                        §          No. 3:14-cv-1975-BN
                                          §
CAROLYN W. COLVIN,                        §
Acting Commissioner of Social Security,   §
                                          §
            Defendant.                    §

## MEMORANDUM OPINION AND ORDER

Plaintiff Gregory Hutchins seeks judicial review of a final adverse decision of the

Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons

explained below, the hearing decision is reversed.

## Background

Plaintiff alleges that he became disabled on October 20, 2009 as a result of

arthritis in his back, hips, hands, bilateral carpal tunnel syndrome, and hypertension.

*See* Administrative Record [Dkt. No. 11 ("Tr.")] at 77. Plaintiff applied for Title II

disability insurance benefits and was insured through December 31, 2009. *See id*. at

72. After his application for such benefits was denied initially and on reconsideration,

*see id*. at 77, Plaintiff requested a hearing before an administrative law judge ("ALJ").

That hearing was held on December 13, 2012. *See id*. At the time of the hearing,

Plaintiff was 62 years old. He has a high school education and past work experience

as a transmission mechanic. *See id*. at 24. Plaintiff did not engage in substantial

1

gainful activity from October 20, 2009 through his last insured date of December 31, 2009. *See id.* at 74.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. *See id.* at 72. Although the medical evidence established that Plaintiff suffered from degenerative joint disease of the right and left shoulder, status post right rotator cuff tear repair surgery, degenerative joint disease of the right hand, bilateral carpal tunnel syndrome, degenerative disc disease of the lumbar spine, hypertension, goiter, peptic ulcer disease, alcohol abuse, deep venous thrombrosis, gastrointestinal prophylaxis, and tinnitus, *see id.* at 74-75, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations, *see id.* at 76. The ALJ further determined that Plaintiff had the residual functional capacity to perform his past relevant work as a transmission mechanic, *see id.* at 81, and other medium work that involved occasional reaching and frequent (but not constant) handling and fingering, *see id.* at 77. Therefore, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. *See id.* at 81.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision on two general grounds: (1) the ALJ improperly rejected the opinion of Plaintiff's treating physician, and (2) the ALJ used the wrong legal standard in evaluating the severity of his impairments.

The Court determines that the hearing decision must be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo. See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits, a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1.   The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.   The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3.   The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4.   If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5.   If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Copeland*, 771 F.3d at 923 ("The Commissioner

typically uses a sequential five-step process to determine whether a claimant is

disabled within the meaning of the Social Security Act. The analysis is: First, the

claimant must not be presently working. Second, a claimant must establish that he has

an impairment or combination of impairments which significantly limit [her] physical

or mental ability to do basic work activities. Third, to secure a finding of disability

without consideration of age, education, and work experience, a claimant must

establish that his impairment meets or equals an impairment in the appendix to the

regulations. Fourth, a claimant must establish that his impairment prevents him from

doing past relevant work. Finally, the burden shifts to the Secretary to establish that

the claimant can perform the relevant work. If the Secretary meets this burden, the

claimant must then prove that he cannot in fact perform the work suggested." (internal

quotation marks omitted)); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In

evaluating a disability claim, the Commissioner conducts a five-step sequential

analysis to determine whether (1) the claimant is presently working; (2) the claimant

has a severe impairment; (3) the impairment meets or equals an impairment listed in

appendix 1 of the social security regulations; (4) the impairment prevents the claimant

from doing past relevant work; and (5) the impairment prevents the claimant from

doing any other substantial gainful activity.").

The claimant bears the initial burden of establishing a disability through the

first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to

show that there is other substantial work in the national economy that the claimant

can perform. *See Copeland*, 771 F.3d at 923; *Audler,* 501 F.3d at 448. A finding that the

claimant is disabled or not disabled at any point in the five-step review is conclusive

and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813

F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the

Court's function is to ascertain whether the record as a whole contains substantial

evidence to support the Commissioner's final decision. The Court weighs four elements

to determine whether there is substantial evidence of disability: (1) objective medical

facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective

evidence of pain and disability; and (4) the claimant's age, education, and work history.

*See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for

disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the

resulting decision is not substantially justified. *See id.* However, the Court does not

hold the ALJ to procedural perfection and will reverse the ALJ's decision as not

supported by substantial evidence where the claimant shows that the ALJ failed to

fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff,

*see Jones v. Astrue,* 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's

substantial rights have been affected, *see Audler,* 501 F.3d at 448. "Prejudice can be

established by showing that additional evidence would have been produced if the ALJ

had fully developed the record, and that the additional evidence might have led to a

different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

The relevant time period in this case is from October 20, 2009, Plaintiff's alleged onset date of disability, through December 31, 2009, the date that Plaintiff was last insured. During the December 13, 2012 hearing, Plaintiff testified that he was a transmissions mechanic and had only worked one time since June 1, 2004. *See* Tr. 25, 80. He further recounted that he had difficulty walking because of gout. *See id.* at 48 ("If I had the gout; I couldn't even walk."). He also claimed that his hypertension resulted in dizzy spells in 2011. *See id.* at 53.

In June 2007, Plaintiff presented to Dr. Terry K. Gemas, who noted that Plaintiff had a full range of motion and strength in his shoulders. *See id.* at 78, 427. Dr. Gemas also noted that Plaintiff's right "shoulder was doing wonderfully." *Id.* In November 2009, Plaintiff visited the emergency room – after he had worked for two days – and underwent medical testing. *See id.* at 75, 314. Dr. Nadia Malik authored the emergency room examination report, which revealed that Plaintiff had normal chest functioning. *See id.* at 75, 315-316. Although this report showed that Plaintiff suffered from hypertension, a goiter, peptic ulcer disease, alcohol abuse, deep venous thrombrosis, gastrointestinal prophylaxis, and tinnitus, it did not reveal any symptom

or limitation resulting from the aforementioned impairments. *See id.* at 75-76. Plaintiff was never diagnosed with gout during the relevant time period. *See id.* at 76.

On July 12, 2012, Dr. Bratsch, Plaintiff's treating physician, completed a Physical Residual Functional Capacity Questionnaire checklist in which he indicated that Plaintiff could only sit, stand, and walk for one hour in an eight-hour day and could only occasionally lift up to ten pounds. *See id.* at 80, 393. Dr. Bratsch also opined that Plaintiff would need to be absent four or more days from work because of his pain and Plaintiff's limitations were disabling. *See id.* at 395.

The ALJ gave Dr. Bratsch's opinion little weight and considered it conclusory because it did not contain any medical evidence from the relevant time period and otherwise provided very little explanation of the evidence relied on in forming Dr. Bratsch's assessment of Plaintiff's functioning. *See id.* at 80.

The ALJ considered Plaintiff's impairments "under the standard set forth in *Stone v. Heckler*, 752 F2d 1099 (5th Cir. 1985)," and concluded that his degenerative joint disease of the shoulders and right hand, degenerative disc disease of the lumbar spine, bilateral carpal tunnel syndrome, and post right rotator cuff tear were severe pursuant to 20 C.F.R. 404.1521(b). *See id.* at 74. But the ALJ found Plaintiff's diagnosis of chest pain, hypertension, goiter, peptic ulcer disease, alcohol abuse, deep venous thrombrosis, gastrointestinal prophylaxis, and bilateral hearing loss/tinnitus to be nonsevere, during the relevant time period, because there was no indication that

8

those conditions more than minimally affected Plaintiff's ability to work full-time. *See id.* at 74-76.

Taking into account the medical evidence, the ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform medium work with slight limitations for his overhead reaching, handling, and fingering. *See id.* at 77. The ALJ held that this RFC accounted for Plaintiff's degenerative joint disease of the shoulders and right hand, degenerative disc disease of the lumbar spine, bilateral carpal tunnel syndrome, and post right rotator cuff tear. *See id.* The ALJ also noted that, despite Plaintiff's testimony, the record showed that Plaintiff had worked many times since June 1, 2004 including during the relevant time period. *See id.* at 80. He also found that Plaintiff engaged in "a somewhat normal level of daily activity and interaction" because he admitted to "watching television, taking care of his dogs, taking care of his personal needs, preparing his own meals, vacuuming, riding a mower, and driving a car." *Id.* at 46, 80. The ALJ concluded that Plaintiff was "capable of performing his past relevant work as transmission mechanic," and was not under a disability, as defined in the Social Security Act (20 C.F.R. 404.1520(f)). *Id.* at 81.

Consideration of Dr. Bratsch's Opinion

Plaintiff first contends that the ALJ committed reversible error when he gave little weight to his treating physician Dr. Michael Bratsch's opinion without first applying the factors set forth in 20 C.F.R. § 404.1527(c)(2). *See* Dkt. No. 16 at 11.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175–76 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)(2)). But the ALJ "is free to reject the opinion of any physician when the evidence supports a contrary conclusion" and when good cause is shown, the ALJ must consider specific "factors before declining to give any weight to the opinions of the claimant's treating specialist." *Newton v. Apfel*, 209 F.3d 448, 455-456 (5th Cir. 2000) (internal quotations omitted). Specifically, the ALJ must consider:

> (1) the physician's length of treatment of the claimant;
> (2) the physician's frequency of examination;
> (3) the nature and extent of the treatment relationship;
> (4) the support of the physician's opinion afforded by the medical evidence of record;
> (5) the consistency of the opinion with the record as a whole; and
> (6) the specialization of the treating physician.

20 C.F.R. § 404.1527(c)(2); *see also Newton*, 209 F.3d at 456. But, in decisions construing *Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there is

competing first-hand medical evidence from examining physicians, the ALJ need not necessarily set forth his analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician. *See id.* at 466-67; *see also Newton*, 209 F.3d at 459.

Here, the ALJ erred by failing to perform the analysis outlined in *Newton* when giving Dr. Bratsch's opinion "little weight." Tr. at 80. An ALJ need not engage in the analysis required by *Newton* if there is reliable medical evidence from examining physicians controverting the claimant's treating physician. *See Newton*, 209 F.3d at 453. But "the Commissioner concedes that there are no medical opinions dated during the relevant time period." Dkt. No. 17 at 5. And, contrary to the Commissioner's assertions, Dr. Bratsch's opinion is not facially invalid simply because it is retrospective, and the ALJ's cursory discussion of Dr. Bratsch's opinion analysis does not constitute a proper analysis of the Section 404.1527(c)(2) factors, as *Newton* requires. *See* Tr. at 80. Neither is this error harmless because this Court cannot say what the ALJ would have done had he properly evaluated the treating physician's opinion. *See Singleton v. Astrue*, No. 3:11-cv-2332-BN, 2013 WL 460066, at *6 (N.D. Tex. Feb. 7, 2013).

Error under *Stone v. Heckler*

Plaintiff next contends that the ALJ used the wrong legal standard in evaluating the severity of his hypertension, goiter, peptic ulcer disease, bilateral hearing loss, and tinnitus. *See* Dkt. No. 16 at 15.

The ALJ considered Plaintiff's impairments "under the standard set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)." Tr. at 74. In *Stone*, the United States Court of Appeals for the Fifth Circuit "construed the current regulation as setting the following standard in determining whether a claimant's impairment is severe: '[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Id.* at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). In making a severity determination, the ALJ must set forth the correct standard by reference to Fifth Circuit opinions or by an express statement that the Fifth Circuit's construction of the regulation has been applied. *See Hampton v. Bowen*, 785 F.2d at 1308, 1311 (5th Cir. 1986). A court must assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to [*Stone* ] or another [opinion] of the same effect, or by an express statement that the construction [the Fifth Circuit gave] to 20 C.F.R. § 404.1520(c) (1984) is used." *Stone*, 752 F.2d at 1106.

Notwithstanding this presumption, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *See Hampton,* 785 F.2d at 1311. That is, the presumption may be rebutted by a showing that the ALJ applied the correct legal standard, regardless of the ALJ's recitation of the severity standard. *See Morris v. Astrue*, No. 4:11-cv-631-Y, 2012 WL

4468185, at *9 (N.D. Tex. Sept. 4, 2012) ; *see also Taylor v. Astrue*, No. 3:10-cv-1158-O-BD, 2011 WL 4091506, at *6 (N.D. Tex. June 27, 2011), *rec. adopted*, 2011 WL 4091503 (N.D. Tex. Sept. 14, 2011), *aff'd*, 706 F.3d 600 (5th Cir. 2012) (applying harmless error analysis in *Stone* error cases).

Here, the ALJ recited the incorrect standard. Referencing *Stone*, the ALJ found Plaintiff's diagnosis of hypertension, goiter, peptic ulcer disease, alcohol abuse, deep venous thrombrosis, gastrointestinal prophylaxis, and bilateral hearing loss/tinnitus, during the relevant time period, to be nonsevere because there was no indication that those conditions more than minimally affected Plaintiff's ability to work full-time. *Id.* at 74-76. The standard recited by the ALJ here allows for a minimal effect on the claimant's ability to work full-time. But the *Stone* severity standard does not allow for *any* interference with work ability – even minimal interference. *See Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805-06 (N.D. Tex. 2009); *Morris*, 2012 WL 4468185, at *5. Thus, despite having referenced *Stone* in his decision, the ALJ did not actually state and apply the correct standard.

In the past, this would be grounds for automatic remand because it constituted a legal error. *See, e.g.*, *Scroggins*, 598 F. Supp. 2d at 806-07. More recently, however, courts have not automatically remanded such cases. *See, e.g., Rivera v. Colvin*, No. 3:12-cv-1748-G-BN, 2013 WL 4623514, at *6 (N.D. Tex. Aug. 28, 2013); *Easom v. Colvin*, No. 3:12-cv-1289-N-BN, 2013 WL 2458540, at *4-*6 (N.D. Tex. June 7, 2013). Rather, the presumption that legal error occurred based on the incorrect wording of

the standard may be rebutted by a showing that the error was harmless. *see Taylor*,

706 F.3d at 603; *Yanez v. Colvin*, No. 3:12-cv-1796-K-BG, 2013 WL 4766836, at *3

(N.D. Tex. Sept. 5, 2013). But, here, because this case will be remanded to reconsider

the treating physician's evidence, and the Court is confident the *Stone* error will be

remedied on remand, the Court need not evaluate whether the ALJ's *Stone* error was

harmless.

### Conclusion

The hearing decision is reversed and this case is remanded to the Commissioner

of Social Security for further proceedings consistent with this opinion.[1]

DATED: August 6, 2015

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

---

[1] By remanding this case for further administrative proceedings, the Court does not suggest that Plaintiff is or should be found disabled.